## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

**TIGER MEDICAL HOLDINGS, LLC d/b/a TIGER BIOSCIENCES, EXTREMITY CARE, LLC, and REGENTX PARTNERS, LLC,**

                **Plaintiffs,**

    **v.**

**MIMEDX GROUP, INC.,**

                **Defendant.**

**Civil Action No. 7:25-cv-161**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Tiger Medical Holdings, LLC (doing business as "Tiger BioSciences"), Extremity Care, LLC, and RegenTX Partners, LLC (collectively, "Plaintiffs"), by their undersigned attorneys, for their Complaint against defendant MiMedx Group, Inc. ("MiMedx" or "Defendant"), bring this action concerning the invalidity and non-infringement of certain MiMedx patents, on the heels of MiMedx's failed exhaustive efforts to remove Plaintiffs' products from the marketplace and to harm patients and healthcare decision-making in the hard-to-heal wound care market, and allege as follows:

## NATURE OF THE ACTION

1.      This is an action seeking Declaratory Judgments that Plaintiffs do not infringe claims of United States Patent Nos. 8,323,701, 8,642,092, 8,703,207, 8,709,494, 9,789,137, and 10,406,259, which are purportedly owned by MiMedx (collectively, the "MiMedx Patents"), and that the claims of the MiMedx Patents are invalid.

2.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, Title 35 of the United States Code.

## THE PARTIES

3.      Tiger BioSciences focuses on discovering, developing, and commercializing innovative regenerative tissue-based technologies.

4.      Tiger BioSciences is a limited liability company existing under the laws of the State of Delaware, having a principal place of business at 555 East North Lane, Suite 5000, Building D, Conshohocken, Pennsylvania, 19428.  In addition to its Pennsylvania office, Tiger BioSciences operates offices at 12000 Network Boulevard, Suite 300, San Antonio, Texas, 78249 and 120 Chula Vista Drive, San Antonio, Texas, 78232.

5.      Extremity Care, LLC is an affiliate entity of Tiger BioSciences.  Extremity Care, LLC is a leading provider of human cell and tissue products designed to provide therapeutic solutions for wound healing and to support the cellular restorative process.

6.      Extremity Care, LLC is a limited liability company existing under the laws of the State of Florida, having a principal place of business at 555 East North Lane, Suite 5000, Building D, Conshohocken, Pennsylvania, 19428.

7.      RegenTX Partners, LLC is a wholly owned subsidiary of Extremity Care, LLC. RegenTX Partners, LLC is a human tissue processing company focused on maximizing the usage and yield of donated tissue for engineering, research, and processing.

8.      RegenTX Partners, LLC is a limited liability company existing under the laws of the State of Texas, having a principal place of business at 120 Chula Vista Drive, San Antonio, Texas, 78232.

9.      Upon information and belief, MiMedx is a corporation existing under the laws of the State of Florida, having a principal place of business at 1775 West Oak Commons Court, Marietta, Georgia, 30062.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

11.     This Court has personal jurisdiction over MiMedx in this action pursuant to due process and/or the Texas Long-Arm Statute by virtue of at least the substantial activities that MiMedx conducts in this District, which establish minimum contacts with this forum such that the exercise of jurisdiction over MiMedx would not offend traditional notions of fair play and substantial justice.

12.     This conduct includes but is not limited to: (i) sending a letter into this District accusing Plaintiff Tiger BioSciences—a company with a dedicated presence in the State of Texas—of patent infringement; (ii) undertaking efforts to enforce one of the same patents that is the subject of this suit against other parties, unrelated to this action, in multiple divisions in this District;[1] (iii) having directed activities to customers in the State of Texas and this District, solicited business in the State of Texas and this District, transacted business within the State of Texas and this District, and attempted to derive financial benefit from residents of the State of Texas and this District, including benefits directly related to the causes of action set forth herein; and (iv) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in the State of Texas and this District.

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because MiMedx is subject to personal jurisdiction in this District.

---

[1] *See MiMedx Group, Inc. v. Tissue Transplant Tech., Ltd. et al.*, No. 1:14-cv-00464-LY (W.D. Tex.), transferred as case No. 5:14-cv-00719-RCL (W.D. Tex.).

## FACTUAL BACKGROUND

### *The MiMedx Patents*

14.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 8,323,701 (the "'701 patent"), entitled "Placental Tissue Grafts," which issued on December 4, 2012.  A true and correct copy of the '701 patent is attached hereto as **Exhibit 1**.

15.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 8,642,092 (the "'092 patent"), entitled "Placental Tissue Grafts," which issued on February 4, 2014.  A true and correct copy of the '092 patent is attached hereto as **Exhibit 2**.

16.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 8,703,207 (the "'207 patent"), entitled "Placental Tissue Grafts," which issued on April 22, 2014.  A true and correct copy of the '207 patent is attached hereto as **Exhibit 3**.

17.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 8,709,494 (the "'494 patent"), entitled "Placental Tissue Grafts," which issued on April 29, 2014.  A true and correct copy of the '494 patent is attached hereto as **Exhibit 4**.

18.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 9,789,137 (the "'137 patent"), entitled "Placental Tissue Grafts and Improved Methods of Preparing and Using the Same," which issued on October 17, 2017.  A true and correct copy of the '137 patent is attached hereto as **Exhibit 5**.

19.    Upon information and belief, MiMedx purports to be the owner of U.S. Patent No. 10,406,259 (the "'259 patent"), entitled "Placental Tissue Grafts and Improved Methods of Preparing and Using the Same," which issued on September 10, 2019.  A true and correct copy of the '259 patent is attached hereto as **Exhibit 6**.

### *MiMedx's Accusations of Patent Infringement*

20.     Plaintiffs manufacture, distribute, and sell a variety of wound care products, including skin grafts made using donated human placental tissue.  Certain of these products are sold under the trademarks Restorigin™, barrera™, carePATCH™, alloPLY™, and ACApatch™ (collectively, "Plaintiffs' Placental Allografts").

21.     RegenTX Partners, LLC manufactures and processes Plaintiffs' Placental Allografts, which Extremity Care, LLC then distributes.

22.     Plaintiffs started selling these products in September 2023 (Restorigin™), July 2023 (barrera™), December 2022 (carePATCH™), September 2024 (alloPLY™), and September 2024 (ACApatch™).

23.     In a letter dated February 11, 2025, counsel for MiMedx "with respect to intellectual property matters" wrote to Plaintiffs Tiger BioSciences and Extremity Care, LLC "to ensure that [Plaintiffs] are on notice of MiMedx's patent rights, including, but not limited to," the MiMedx Patents.  **Exhibit 7** ("MiMedx's February 11, 2025 Letter") at 1.

24.     MiMedx's February 11, 2025 Letter utilized threatening language with respect to MiMedx's assertion of the MiMedx Patents against Plaintiffs.  For example, MiMedx's February 11, 2025 Letter stated that MiMedx "believe[s]" Plaintiffs' Placental Allografts "practice, without MiMedx's consent," certain claims of the MiMedx Patents.  *Id.* at 1.  MiMedx's February 11, 2025 Letter also stated that "MiMedx takes these claims seriously, recently filing suit against" another company in the placental allograft space.  *Id.* at 2.  And MiMedx's February 11, 2025 Letter stated that, "[t]o the extent that Tiger and Extremity Care contend that they do not infringe" the MiMedx Patents, failure to "promptly identify all such reasons and provide all

factual support" will "be an acknowledgement that [Plaintiffs' Placental Allografts] infringe

those claims." *Id.* at 1-2.

25.    MiMedx's February 11, 2025 Letter made baseless infringement accusations of

six specific patents and identified five specific allegedly infringing products. *Id.* at 1-2.

26.    In MiMedx's February 11, 2025 Letter, MiMedx purported to have conducted an

extensive infringement analysis.  For example, MiMedx's February 11, 2025 Letter stated that

MiMedx performed an "investigation" into whether Plaintiffs' Placental Allografts "practice" the

claims of the MiMedx Patents. *Id.* at 1.  And, rather than generally alleging that Plaintiffs'

Placental Allografts infringe the identified MiMedx Patents, MiMedx's February 11, 2025 Letter

identified specific claims that MiMedx alleges each of Plaintiffs' Placental Allografts

purportedly infringe—namely, that (i) Plaintiffs' Restorigin™, barrera™, carePATCH™, and

alloPLY™ products allegedly practice "at least Claims 9-10 of the '494 Patent; Claims 1 and 4

of the '259 Patent; Claims 1-2 and 7-8 of the '701 Patent; Claims 1-4, and 5-9 of the '137 Patent;

and Claims 1-4 and 6-7 of the '207 Patent"; and (ii) Plaintiffs' ACApatch™ product allegedly

practices at least Claims 1-4, 6, and 9-10 of the '494 Patent; Claims 1-2, 5, and 7-8 of the '701

Patent; Claims 1-5, and 7 of the '092 Patent; Claims 1-4 and 6-8 of the '207 Patent; and Claims

1, 4, and 5 of the '259 Patent." *Id.* at 1-2.

27.    Upon information and belief, MiMedx is familiar with Plaintiffs' Placental

Allografts.

28.    Upon information and belief, MiMedx has an extensive history of enforcing the

MiMedx Patents.  As noted *supra* ¶ 24, MiMedx's February 11, 2025 Letter states that it

"recently fil[ed] suit against Surgenex, LLC. *See MiMedx Group, Inc. v. Surgenex, LLC*, 2:24-

cv-03558-SMB (D.Ariz.)." **Exhibit 7** at 2.  MiMedx's suit against Surgenex, LLC in the District

of Arizona asserts four of the six patents identified in MiMedx's February 11, 2025 Letter. *Compare* **Exhibit 8** (*MiMedx v. Surgenex*, D.I. 1) at 2 *with* **Exhibit 7** at 1. MiMedx asserted the remaining patents identified in its February 11, 2025 Letter in a lawsuit in the Northern District of Georgia. *Compare* **Exhibit 9** (*MiMedx Group, Inc. v. Liventa Bioscience, Inc. et al.*, No. 1:14-cv-1178-MHC (N.D. Ga.), D.I. 178) at 1 *with* **Exhibit 7** at 1. Additionally, MiMedx has asserted at least one of the patents identified in its February 11, 2025 Letter in at least three other litigations, including in this District. *See* **Exhibit 10** (*MiMedx Group, Inc. v. Tissue Transplant Tech., Ltd. et al.*, No. 1:14-cv-00464-RCL (W.D. Tex.), D.I. 17) at 1; **Exhibit 11** (*MiMedx Group, Inc. v. Nutech Med., Inc. et al.*, No. 2:15-cv-00369-LCB (N.D. Ala.), D.I. 1) at 1; **Exhibit 12** (*MiMedx Group, Inc. v. Vivex Biomedical, Inc.*, No. 1:16-cv-01079-MHC (N.D. Ga.), D.I. 1) at 1. In total, MiMedx has previously asserted all of the patents identified in its February 11, 2025 Letter and has brought no fewer than five separate lawsuits asserting at least one of those patents.

29.     MiMedx's February 11, 2025 Letter is not MiMedx's sole communication regarding the controversy between the parties. MiMedx sent Plaintiffs a second letter dated March 18, 2024, "following up" on MiMedx's earlier letter. **Exhibit 13** ("MiMedx's March 18, 2025 Letter").

30.     MiMedx's March 18, 2025 Letter signaled MiMedx's intent to escalate the dispute, at least because it imposed a March 26, 2025 deadline for Plaintiffs to respond.[2] *Id.*

31.     Plaintiffs filed the present complaint on April 11, 2025.

---

[2] On March 20, 2025, Plaintiffs requested until April 15, 2025 to respond. *See* **Exhibit 14**.

***MiMedx's Unreasonable Delay in Asserting Its Patents***

32.     The MiMedx Patents stem from two different patent families. On their faces, the '494 and '259 patents purport to claim priority to provisional applications filed as early as August 17, 2006; and the '701, '092, '207, and '137 patents purport to claim priority to provisional applications filed as early as September 7, 2007.

33.     The earliest-issuing of the MiMedx Patents from the August 17, 2006 family (the '494 patent) issued on April 29, 2014, and the earliest-issuing of the MiMedx Patents from the September 7, 2007 family (the '701 patent) issued on December 4, 2012.

34.     Upon information and belief, despite MiMedx's longstanding awareness of Plaintiffs' Placental Allografts, MiMedx waited over two years to raise any purported allegation of infringement.

35.     Upon information and belief, MiMedx sat on its hands with respect to enforcement of the MiMedx Patents against Plaintiffs because MiMedx believed it could effectively eliminate Plaintiffs' Placental Allografts from the allograft marketplace (and, by extension, deprive patients in need of treatments) via a surreptitious campaign to lobby the Centers for Medicare and Medicaid Services ("CMS"), and CMS' Medicare Administrative Contractors ("MACs"), under the prior (Biden) Administration.

36.     Upon information and belief, MiMedx lobbied CMS, and CMS' MACs, to orchestrate a drastic, unlawful, and scientifically unfounded change to longstanding Medicare reimbursement policies that would dramatically increase MiMedx's market share to the detriment of Plaintiffs (as well as many other allograft manufacturers) and patients.

37.     CMS contracts with—and thus oversees and controls—seven Medicare Administrative Contractors in order to implement portions of the Medicare program. Each MAC

operates in a specific geographic region or regions of the country. In addition to making initial

coverage determinations on a claim-by-claim basis, MACs develop and adopt broader-based

local coverage determinations ("LCDs") that decide whether a particular item or service is

covered by Medicare within the MAC's assigned geographic region.

38.    On October 1, 2015, three of the seven MACs issued three identical LCDs ("the

2015 LCDs"). Pursuant to the 2015 LCDs, a broad range of skin substitutes—including

Plaintiffs' Placental Allografts—were eligible for Medicare reimbursement once certain

conditions were met.

39.    Accordingly, for nearly a decade, Medicare patients in need of limb- and life-

saving wound care have had access to a variety of skin substitutes, ranging from autologous skin

grafts to allografts, xenografts to bioengineered skin, and bioengineered skin substitutes to

cellular or tissue-based products.

40.    However, upon information and belief, efforts to deprive patients of those critical

treatment options surfaced on August 3, 2023, when the three MACs proposed new,

substantively identical LCDs for public comment, all of which would make Plaintiffs' Placental

Allografts (as well as the allografts of many other manufactures) ineligible for Medicare

reimbursement.

41.    Upon information and belief, the MACs' August 3, 2023 proposed LCDs resulted

from MiMedx's surreptitious CMS-lobbying campaign.

42.    Upon information and belief, following significant outcry from within the

industry as well as the public at large, the three MACs first delayed, and then eventually

withdrew, the August 3, 2023 proposed LCDs.

43. However, upon information and belief, MiMedx's attempt to influence the MACs' decision-making was far from over.

44. On April 25, 2024, all seven MACs proposed LCDs that were substantively identical to not only the August 3, 2023 proposed LCD but also each other. This action was unlawful because MACs are not permitted to drive national policy, which must instead be determined by a distinct and far more rigorous process set forth in the statute for issuing national (rather than local) coverage determinations. *See* 42 U.S.C. §§ 1395ff(f)(1), 1395y(l).

45. Upon information and belief, the MACs' unlawful April 25, 2024 action also resulted from MiMedx's surreptitious CMS-lobbying campaign.

46. On November 14, 2024, all seven MACs simultaneously issued a final, unified LCD that, like the proposed LCDs, radically departs from Medicare's prior coverage policy in that it effectively excludes approximately 85% of the skin substitutes that were previously eligible for Medicare reimbursement (including Plaintiffs' Placental Allografts). The final, unified LCD was initially slated to go into effect on February 12, 2025.

47. Upon information and belief, the MACs' unlawful November 14, 2024 action also resulted from MiMedx's surreptitious CMS-lobbying campaign.

48. Also on November 14, 2024—the same day the final, unified LCD was announced—MiMedx's Chief Executive Officer boasted in a press release about MiMedx's "exhaustive efforts with" CMS and the MACs and stated, "[a]s a reminder, two of our allografts – EPIFIX® and EPICORD® – are on the list of covered products. As such, we are poised to benefit given the strong clinical evidence that back our products and the finite number of suitable options eligible for coverage." *See* **Exhibit 15** (last visited on April 11, 2025).

49.     Upon information and belief, MiMedx believed that wielding the reimbursement decision-making authority of CMS against Plaintiffs and others in the industry was a way for MiMedx to "cash-in," even if that meant harming other industry placental allograft participants and, more importantly, harming patients by limiting healthcare options and supply.

50.     Indeed, MiMedx's stock climbed 51% between opening on April 25, 2024 (the day all seven MACs first proposed the unified LCDs) and closing on November 14, 2024 (the day of MiMedx's CEO's boast), including a single-day price jump of 16% from open to close on November 14, 2024.

51.     Upon information and belief, MiMedx's CMS-lobbying was a favorable alternative to asserting the MiMedx Patents in a timely manner because the latter would have required MiMedx to expend significant resources attempting to prove the MiMedx Patents are infringed and jeopardized the MiMedx Patents' validity, prior to CMS' unlawful exclusion of Plaintiffs' Placental Allografts from the marketplace.

52.     On January 15, 2025, the current (Trump) Administration issued an Executive Order requiring additional analysis of the final, unified LCD and delaying its implementation until April 13, 2025.

53.     Upon information and belief, MiMedx only attempted to enforce the MiMedx Patents against Plaintiffs upon realizing that its last-ditch, surreptitious CMS-lobbying efforts to unfairly and unlawfully exclude Plaintiffs' Placental Allografts from the marketplace would not succeed.

54.     On February 11, 2025—one day prior to the date upon which the final, unified LCD was originally set to go into effect—MiMedx sent its first letter accusing Plaintiffs of infringing the MiMedx Patents.  *See* **Exhibit 7** at 1.

On April 11, 2025, CMS further delayed implementation of the LCD until January 1, 2026, noting its ongoing review of coverage policies and the importance of maintaining patient access to products.  *See* **Exhibit 16**.

## COUNT I: DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '701 PATENT

55.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

56.     An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding whether Plaintiffs infringe any valid and enforceable claim of the '701 patent.

57.     Plaintiffs do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '701 patent.

58.     MiMedx's February 11, 2025 Letter asserts independent claim 1 of the '701 patent, which states:

**1**. A tissue graft consisting of:

a first membrane comprising modified amnion wherein the modified amnion has a first side which is an exposed basement membrane and a second side which is an exposed jelly-like fibroblast cellular layer; and

one or more additional membranes sequentially layered such that the first additional membrane is layered adjacent to the exposed fibroblast layer of the first membrane,

wherein the at least one or more additional membranes is selected from the group consisting of amnion, chorion, allograft pericardium, allograft acellular dermis, amniotic membrane, Wharton's jelly, and combinations thereof.

59.    By way of a non-limiting example, Plaintiffs' Placental Allografts do not infringe claim 1 of the '701 patent because at least the following claim element is not present, literally or under the doctrine of equivalents: "the modified amnion has a first side which is an exposed basement membrane and a second side which is an exposed jelly-like fibroblast cellular layer."

60.    Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and have not infringed any valid and enforceable claim of the '701 patent.

## COUNT II: DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '092 PATENT

61.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

62.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding whether Plaintiffs infringe any valid and enforceable claim of the '092 patent.

63.    Plaintiffs do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '092 patent.

64.    MiMedx's February 11, 2025 Letter asserts independent claim 1 of the '092 patent, which states:

**1**. A multilayered tissue graft comprising:

at least one layer of isolated dehydrated chorion tissue; and

at least one layer of isolated dehydrated amnion tissue provided that at least one of said

amnion layers has an exposed basement layer and an intact fibroblast component

wherein at least one of the chorion layer(s) is layered directly over the fibroblast

component of said amnion layer.

65.    By way of a non-limiting example, Plaintiffs' Placental Allografts do not infringe claim 1 of the '092 patent because at least the following claim element is not present, literally or

under the doctrine of equivalents: "at least one of said amnion layers has an exposed basement layer and an intact fibroblast component."

66.    Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and have not infringed any valid and enforceable claim of the '092 patent.

## COUNT III: DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '207 PATENT

67.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

68.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding whether Plaintiffs infringe any valid and enforceable claim of the '207 patent.

69.    Plaintiffs do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '207 patent.

70.    MiMedx's February 11, 2025 Letter asserts independent claim 1 of the '207 patent, which states:

**1**. A multilayered tissue graft comprising:

at least one layer of isolated amnion tissue provided that at least one of said amnion

layers has an exposed basement layer and an intact fibroblast component; and

at least one additional layer selected from the group consisting of amnion, chorion,

allograft pericardium, allograft acellular dermis, amniotic membrane, Wharton's

jelly, purified Type-1 collagen, biocellulose polymers or copolymers,

biocompatible synthetic polymer or copolymer films, purified small intestinal

submucosa, bladder acellular matrix, cadaveric fascia, or any combination

thereof;

wherein at least one of the additional layer(s) is layered directly over the fibroblast

component of said amnion layer, and further wherein the at least one layer of

amnion tissue and the at least one additional layer are laminated together to form

a multilayered tissue graft.

71.    By way of a non-limiting example, Plaintiffs' Placental Allografts do not infringe

claim 1 of the '207 patent because at least the following claim element is not present, literally or

under the doctrine of equivalents: "at least one of said amnion layers has an exposed basement

layer and an intact fibroblast component."

72.    Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and

have not infringed any valid and enforceable claim of the '207 patent.

**COUNT IV: DECLARATORY JUDGMENT OF**
**NON-INFRINGEMENT OF THE '494 PATENT**

73.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

74.    An actual and justiciable controversy exists between Plaintiffs and MiMedx

regarding whether Plaintiffs infringe any valid and enforceable claim of the '494 patent.

75.    Plaintiffs do not and have not infringed, contributed to the infringement of, or

induced the infringement of any valid and enforceable claim of the '494 patent.

76.    MiMedx's February 11, 2025 Letter asserts independent claims 1, 6, 9, and 10 of

the '494 patent, which state:

**1**. A dehydrated, laminated tissue graft consisting essentially of one or more

washed and/or substantially cleaned amnion layers and one or more washed and/or

substantially cleaned chorion layers, wherein at least one of the amnion layers contains its

fibroblast cell layer, and further wherein the amnion layer and the chorion layer are directly laminated to each other.

**6**. A dehydrated, laminated tissue graft, wherein the tissue graft consists essentially of one or more amnion layers and one or more chorion layers wherein each of the amnion and chorion layers:

are separated from a placenta to provide separate layers of amnion and chorion,

washed and substantially cleaned without removal of the fibroblast cell layer from the amnion layer, and

are layered directly over each other and are laminated and heat dehydrated together to provide the dehydrated, laminated tissue graft.

**9**. A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains an epithelial cellular layer.

**10**. A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains a fibroblast cellular layer.

77.    By way of non-limiting examples, Plaintiffs' Placental Allografts do not infringe claims 1, 6, 9, and 10 of the '494 patent because at least the following claim elements are not present, literally or under the doctrine of equivalents: (i) "one or more washed and/or substantially cleaned amnion layers" (claim 1); (ii) "one or more washed and/or substantially cleaned chorion layers" (claim 1); (iii) "at least one of the amnion layers contains its fibroblast

cell layer" (claim 1); (iv) "the amnion layer and the chorion layer are directly laminated to each other" (claim 1); (v) "separated from a placenta to provide separate layers of amnion and chorion" (claim 6); (vi) "washed and substantially cleaned without removal of the fibroblast cell layer from the amnion layer" (claim 6); (vii) "laminated and heat dehydrated together" (claim 6); (viii) "two or more separated and washed layers" (claim 9); (ix) "the layers are directly laminated to each other" (claim 9); (x) "at least one of said layers is an amnion layer which retains an epithelial cellular layer" (claim 9); (xi) "two or more separated and washed layers" (claim 10); (xii) "the layers are directly laminated to each other" (claim 10); and (xiii) "at least one of said layers is an amnion layer which retains a fibroblast cellular layer" (claim 10).

78.    Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and have not infringed any valid and enforceable claim of the '494 patent.

## COUNT V: DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '137 PATENT

79.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

80.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding whether Plaintiffs infringe any valid and enforceable claim of the '137 patent.

81.    Plaintiffs do not and have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '137 patent.

82.    MiMedx's February 11, 2025 Letter asserts independent claim 1 of the '137 patent, which states:

   **1**. A dehydrated, laminated placental tissue graft which is a laminate comprising a washed amnion layer which has a first side which is an exposed basement membrane and a second side which is a fibroblast layer, and a second layer which is a washed amnion or

a washed chorion, wherein said amnion layer and said second layer are dehydrated and

laminated directly to each other;

wherein said amnion layer and said second layer are not held in together with a

suture.

83.     By way of non-limiting examples, Plaintiffs' Placental Allografts do not infringe

claim 1 of the '137 patent because at least the following claim elements are not present, literally

or under the doctrine of equivalents: (i) "a washed amnion layer which has a first side which is

an exposed basement membrane and a second side which is a fibroblast layer" and (ii) "a second

layer which is a washed amnion or a washed chorion."

84.     Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and

have not infringed any valid and enforceable claim of the '137 patent.

### COUNT VI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '259 PATENT

85.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

86.     An actual and justiciable controversy exists between Plaintiffs and MiMedx

regarding whether Plaintiffs infringe any valid and enforceable claim of the '259 patent.

87.     Plaintiffs do not and have not infringed, contributed to the infringement of, or

induced the infringement of any valid and enforceable claim of the '259 patent.

88.     MiMedx's February 11, 2025 Letter asserts independent claim 1 of the '259

patent, which states:

**1**. A package comprising a sealed, deoxygenated container, said sealed,

deoxygenated container comprising a dehydrated placental tissue graft, wherein said graft

has a shelf-life of at least 5 years when stored in said container at room temperature;

wherein said graft comprises a first layer which is a separated and washed amnion

layer which comprises an epithelial cell layer, and a second layer which is

a separated and washed amnion or chorion layer, and

wherein the first and second layers are directly laminated to each other.

89.    By way of non-limiting examples, Plaintiffs' Placental Allografts do not infringe

claim 1 of the '259 patent because at least the following claim elements are not present, literally

or under the doctrine of equivalents: (i) "said graft has a shelf-life of at least 5 years when stored

in said container at room temperature"; (ii) "a first layer which is a separated and washed amnion

layer which comprises an epithelial cell layer"; (iii) "a second layer which is a separated and

washed amnion or chorion layer"; and (vi) "the first and second layers are directly laminated to

each other."

90.    Plaintiffs are entitled to judgment declaring that Plaintiffs do not infringe and

have not infringed any valid and enforceable claim of the '259 patent.

**COUNT VII: DECLARATORY JUDGMENT
OF INVALIDITY OF THE '701 PATENT**

91.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

92.    An actual and justiciable controversy exists between Plaintiffs and MiMedx

regarding the invalidity of the '701 patent.

93.    The claims of the '701 patent are invalid under 35 U.S.C. § 101 because the

claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and

lack an inventive concept that transforms the claimed subject matter into a patentable invention.

By way of a non-limiting example, similar claims were previously found invalid under 35 U.S.C.

§ 101 in a prior litigation brought by MiMedx involving the '494 patent. *MiMedx Grp., Inc. v. Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712 (N.D. Ala. Nov. 24, 2015).

94.     The claims of the '701 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '701 patent, including but not limited to:

- Liu, Q., et al., US2007/0021762, "Ocular plug formed from placenta derived collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns,*" Research in Burns 289 (3d ed. 1971).

95.     A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '701 patent, and would have had a reasonable

expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

96.     The claims of the '701 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

97.     The claims of the '701 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting examples, at least the following claim elements lack written description support and/or enablement:  (i) "the modified amnion has a first side which is an exposed basement membrane" (claim 1); (ii) "the modified amnion has a . . . second side which is an exposed jelly-like fibroblast cellular layer" (claim 1); (iii) "the first additional membrane is layered adjacent to the exposed fibroblast layer" (claim 1); and (iv) "a layer of chorion layered to the first membrane adjacent to the exposed jelly-like fibroblast cellular layer" (claim 5).

98.     The claims of the '701 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '701 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "the modified amnion has a first side which is an exposed basement membrane" (claim 1); (ii) "the modified

amnion has a . . . second side which is an exposed jelly-like fibroblast cellular layer" (claim 1);
(iii) "the first additional membrane is layered adjacent to the exposed fibroblast layer" (claim 1);
and (iv) "a layer of chorion layered to the first membrane adjacent to the exposed jelly-like
fibroblast cellular layer" (claim 5).

99.     Plaintiffs are entitled to judgment declaring that the claims of the '701 patent are
invalid.

## COUNT VIII: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '092 PATENT

100.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully
set forth herein.

101.     An actual and justiciable controversy exists between Plaintiffs and MiMedx
regarding the invalidity of the '092 patent.

102.     The claims of the '092 patent are invalid under 35 U.S.C. § 101 because the
claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and
lack an inventive concept that transforms the claimed subject matter into a patentable invention.
By way of a non-limiting example, similar claims were previously found invalid under 35 U.S.C.
§ 101 in a prior litigation brought by MiMedx involving the '494 patent.  *MiMedx Grp., Inc. v.
Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712 (N.D. Ala. Nov. 24, 2015).

103.     The claims of the '092 patent are invalid as anticipated and/or obvious under 35
U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in
one or more references prior to the earliest priority date of the '092 patent, including but not
limited to:

- Liu, Q., et al., US2007/0021762, "Ocular plug formed from placenta derived
  collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns,*" Research in Burns 289 (3d ed. 1971).

104.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '092 patent, and would have had a reasonable expectation of success in doing so. The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

105.    The claims of the '092 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

106.    The claims of the '092 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a

person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting examples, at least the following claim elements lack written description support and/or enablement:  (i) "at least one of said amnion layers has an exposed basement layer" (claim 1); and (ii) "at least one of said amnion layers has . . . an intact fibroblast component" (claim 1).

107.    The claims of the '092 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '092 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "at least one of said amnion layers has an exposed basement layer" (claim 1); and (ii) "at least one of said amnion layers has . . . an intact fibroblast component" (claim 1).

108.    Plaintiffs are entitled to judgment declaring that the claims of the '092 patent are invalid.

## COUNT IX: DECLARATORY JUDGMENT OF INVALIDITY OF THE '207 PATENT

109.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

110.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding the invalidity of the '207 patent.

111.    The claims of the '207 patent are invalid under 35 U.S.C. § 101 because the claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and lack an inventive concept that transforms the claimed subject matter into a patentable invention.

By way of a non-limiting example, similar claims were previously found invalid under 35 U.S.C. § 101 in a prior litigation brought by MiMedx involving the '494 patent. *MiMedx Grp., Inc. v. Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712 (N.D. Ala. Nov. 24, 2015).

112.    The claims of the '207 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '207 patent, including but not limited to:

- Liu, Q., et al., US2007/0021762, "Ocular plug formed from placenta derived collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns,*" Research in Burns 289 (3d ed. 1971).

113.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '207 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

114.    The claims of the '207 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

115.    The claims of the '207 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting examples, at least the following claim elements lack written description support and/or enablement:  (i) "at least one of said amnion layers has an exposed basement layer" (claim 1); and (ii) "at least one of said amnion layers has . . . an intact fibroblast component" (claim 1).

116.    The claims of the '207 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '207 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "at least one of said amnion layers has an exposed basement layer" (claim 1); and (ii) "at least one of said amnion layers has . . . an intact fibroblast component" (claim 1).

117.    Plaintiffs are entitled to judgment declaring that the claims of the '207 patent are invalid.

## COUNT X: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '494 PATENT

118.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

119.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding the invalidity of the '494 patent.

120.    The claims of the '494 patent are invalid under 35 U.S.C. § 101 because the claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and lack an inventive concept that transforms the claimed subject matter into a patentable invention. By way of a non-limiting example, certain claims of the '494 patent—including asserted claim 6—were previously found invalid under 35 U.S.C. § 101 in a prior litigation brought by MiMedx involving the '494 patent. *MiMedx Grp., Inc. v. Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712 (N.D. Ala. Nov. 24, 2015).

121.    The claims of the '494 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '494 patent, including but not limited to:

- Liu, Q., et al., US2007/0021762, "Ocular plug formed from placenta derived collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns,*" Research in Burns 289 (3d ed. 1971).

122.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '494 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

123.    The claims of the '494 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

124.    The claims of the '494 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting

examples, at least the following claim elements lack written description support and/or enablement:  (i) "one or more washed and/or substantially cleaned amnion layers" (claim 1); "one or more washed and/or substantially cleaned chorion layers" (claim 1); (ii) "at least one of the amnion layers contains its fibroblast cell layer" (claim 1); (iii) "washed and substantially cleaned without removal of the fibroblast cell layer from the amnion layer" (claim 6); (iv) "two or more separated and washed layers" (claim 9); (v) "an amnion layer which retains an epithelial cellular layer" (claim 9); (vi) "two or more separated and washed layers" (claim 10); and (vii) "an amnion layer which retains a fibroblast cellular layer" (claim 10).

125.    The claims of the '494 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '494 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "one or more washed and/or substantially cleaned amnion layers" (claim 1); (ii) "one or more washed and/or substantially cleaned chorion layers" (claim 1); (iii) "at least one of the amnion layers contains its fibroblast cell layer" (claim 1); (iv) "washed and substantially cleaned without removal of the fibroblast cell layer from the amnion layer" (claim 6); (v) "two or more separated and washed layers" (claim 9); (vi) "an amnion layer which retains an epithelial cellular layer" (claim 9); (vii) "two or more separated and washed layers" (claim 10); and (viii) "an amnion layer which retains a fibroblast cellular layer" (claim 10).

126.    Plaintiffs are entitled to judgment declaring that the claims of the '494 patent are invalid.

## COUNT XI: DECLARATORY JUDGMENT
## OF INVALIDITY OF THE '137 PATENT

127.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

128.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding the invalidity of the '137 patent.

129.    The claims of the '137 patent are invalid under 35 U.S.C. § 101 because the claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and lack an inventive concept that transforms the claimed subject matter into a patentable invention. By way of a non-limiting example, similar claims were previously found invalid under 35 U.S.C. § 101 in a prior litigation brought by MiMedx involving the '494 patent. *MiMedx Grp., Inc. v. Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712 (N.D. Ala. Nov. 24, 2015).

130.    The claims of the '137 patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in one or more references prior to the earliest priority date of the '137 patent, including but not limited to:

- Liu, Q., et al., US2007/021762, "Ocular plug formed from placenta derived collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns*," Research in Burns 289 (3d ed. 1971).

131.    A person of ordinary skill in the art would have been motivated to combine these references as of the earliest priority date of the '137 patent, and would have had a reasonable expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

132.    The claims of the '137 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

133.    The claims of the '137 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting examples, at least the following claim elements lack written description support and/or enablement:  (i) "a washed amnion layer" (claim 1); (ii) "a first side which is an exposed

basement membrane" (claim 1); (iii) "a second side which is a fibroblast layer" (claim 1); and (iv) "a second layer which is a washed amnion or a washed chorion" (claim 1).

134.    The claims of the '137 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '137 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "a washed amnion layer" (claim 1); (ii) "a first side which is an exposed basement membrane" (claim 1); (iii) "a second side which is a fibroblast layer" (claim 1); and (iv) "a second layer which is a washed amnion or a washed chorion" (claim 1).

135.    Plaintiffs are entitled to judgment declaring that the claims of the '137 patent are invalid.

**COUNT XII: DECLARATORY JUDGMENT
OF INVALIDITY OF THE '259 PATENT**

136.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

137.    An actual and justiciable controversy exists between Plaintiffs and MiMedx regarding the invalidity of the '259 patent.

138.    The claims of the '259 patent are invalid under 35 U.S.C. § 101 because the claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and lack an inventive concept that transforms the claimed subject matter into a patentable invention. By way of a non-limiting example, similar claims in the related '494 patent were previously found invalid under 35 U.S.C. § 101 in a prior litigation brought by MiMedx involving the '494

patent. *MiMedx Grp., Inc. v. Nutech Med., Inc.*, No. 2:15-cv-00369-VEH, 2015 WL 7458712

(N.D. Ala. Nov. 24, 2015).

139.    The claims of the '259 patent are invalid as anticipated and/or obvious under 35

U.S.C. §§ 102 and 103 because each and every element of those claims was publicly disclosed in

one or more references prior to the earliest priority date of the '259 patent, including but not

limited to:

- Liu, Q., et al., US2007/0021762, "Ocular plug formed from placenta derived collagen biofabric";

- Shenaq, S. M., et al., WO1993/010722, "Fetal membrane tubes for nerve and vessel grafts";

- Tseng, S. C. G., U.S. 6,152,142, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Tseng, S. C. G., U.S. 6,326,019, "Grafts made from amniotic membrane; methods of separating, preserving, and using such grafts in surgeries";

- Hariri, R. J., et al., US2004/0048796, "Collagen biofabric and methods of preparation and use therefor";

- Sulner, J. W., et al., US2007/0038298, "Repair of tympanic membrane using placenta derived collagen biofabric";

- Volkov, M. V., "*Arthroplasty of Joints Using Amniotic Membrane*," 5 ARTHROPLASTY OF THE HIP 53 (1973);

- Vishwakarma, G. K., et al., "*Amniotic Arthroplasty for Tuberculosis of the Hip*," J. BONE AND JOINT SURGERY 68 (1986);

- Miljudin, E. S., et al., "*Silica gel dessication of amniotic membrane with related epithelium cells for ocular surface reconstruction*," 5 CELL AND TISSUE BANK 271 (2004); and

- Klen, R., "*Preparation of chorion and/or amnion grafts used in burns,*" Research in Burns 289 (3d ed. 1971).

140.    A person of ordinary skill in the art would have been motivated to combine these

references as of the earliest priority date of the '259 patent, and would have had a reasonable

expectation of success in doing so.  The differences between the claimed inventions and the prior art are such that the claimed inventions, as a whole, would have been obvious to a person of ordinary skill in the art.

141.    The claims of the '259 patent are invalid under non-statutory obviousness-type double patenting because the claimed inventions are not patentably distinct from MiMedx's earlier-expiring patents and/or patent applications.

142.    The claims of the '259 patent are invalid under 35 U.S.C. § 112, first paragraph, because the specification fails to describe the claimed invention in sufficient detail such that a person of ordinary skill in the art can reasonably conclude that the inventors had possession of the claimed invention, and/or because the specification fails to teach a person of ordinary skill in the art how to make and use the full scope of the claimed inventions.  By way of non-limiting examples, at least the following claim elements lack written description support and/or enablement:  (i) "a first layer which is a separated and washed amnion layer" (claim 1); (ii) "which comprises an epithelial cell layer" (claim 1); and (iii) "a second layer which is a separated and washed amnion or chorion layer" (claim 1).

143.    The claims of the '259 patent are invalid under 35 U.S.C. § 112, second paragraph, because the claims, when read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  By way of non-limiting examples, at least the following claim elements render the '259 patent claims invalid under 35 U.S.C. § 112, second paragraph:  (i) "a first layer which is a separated and washed amnion layer" (claim 1); (ii) "which comprises an epithelial cell layer" (claim 1); and (iii) "a second layer which is a separated and washed amnion or chorion layer" (claim 1).

144.    Plaintiffs are entitled to judgment declaring that the claims of the '259 patent are invalid.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

(A)    A Judgment declaring that Plaintiffs have not infringed and are not infringing, either directly or indirectly, any claim of the MiMedx Patents;

(B)    A Judgment declaring that all claims of the MiMedx Patents are invalid;

(C)    Preliminary and permanent injunctions enjoining MiMedx and its officers, agents, attorneys, and employees, and those acting in privity or concert with them, from alleging, representing, or otherwise stating that Plaintiffs (including their affiliates) infringe any claims of the MiMedx Patents and from instituting or initiating any action or proceeding alleging infringement of any claims of the MiMedx Patents against Plaintiffs (including their affiliates) or any of their customers;

(D)    A Judgment that this is an exceptional case pursuant to 35 U.S.C. § 285 and awarding Plaintiffs their attorneys' fees, costs, and expenses incurred in this action; and

(E)    Such further and other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 11, 2025

By: _____

Steven Callahan
Texas State Bar No. 24053122
CHARHON CALLAHAN ROBSON &
  GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Tel.: (214) 521-6400
Fax: (214) 764-8392

*Of Counsel*:

F. Dominic Cerrito
Eric C. Stops
Frank C. Calvosa
Daniel C. Wiesner
Geoffrey A. Kirsner
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue
New York, New York 10016
(212) 849-7000

*Attorneys for Plaintiffs*
*Tiger Medical Holdings, LLC*
*d/b/a Tiger BioSciences,*
*Extremity Care, LLC, and*
*RegenTX Partners, LLC*

Evan Pearson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, Texas 78701
(737) 667-6100