**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **Tiger Medical Holdings, LLC d/b/a Tiger BioSciences; Extremity Care, LLC; and RegenTX Partners, LLC,** | § § § § § § § § § § § § | |
| *Plaintiffs,* | | **CASE NO. 7:25-CV-00161-DC-DTG** |
| *v.* | | |
| **MiMedx Group, Inc.,** | | |
| *Defendant,* | | |

**REPORT & RECOMMENDATION TO
<u>DENY DEFENDANT'S MOTION TO DISMISS (DKT. NO. 23)</u>**

**TO:   THE HONORABLE DAVID COUNTS,
     UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P.  72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Pending before the Court is the defendant, MiMedx Group, Inc.'s motion to dismiss, or in the, alternative transfer this case (Dkt. No. 23). The defendant's motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, transfer to the Northern District of Georgia under 28 U.S.C. § 1631. After careful consideration of the briefs, arguments, and the applicable law, the Court **RECOMMENDS** that the motion be **DENIED.**

## I.  BACKGROUND

This case is a declaratory judgement action that stems from two letters sent by the defendant. On February 11, 2025, the defendant sent a letter to two of the three plaintiffs. Dkt. 1 ¶¶ 23-26; Dkt. 1-7 at 1. The letters were addressed to the plaintiff, Tiger Biosciences LLC's co-chief executive officers in San Antonio, Texas. Dkt. No. 1-7 at 1. It was also addressed to the plaintiff, Extremity Care LLC's Executive Team Members in Pennsylvania. *Id*. The letter was sent on behalf of the defendant by a law firm, and its stated purpose was to put the plaintiffs on "notice of MediMx's patent rights, including but not limited to" the six patents at issue in this case. *Id*.; Dkt. No. 1 ¶ 1. That letter asserted that the plaintiffs "make, sell, and offer for sale" products that practice the defendant's patents without consent. Dkt. No. 1-7 at 1. It went on to assert that specific products "practice, without MiMedx's consent" several specifically identified claims from several of the patents. *Id*. at 1-2. The letter demanded that the plaintiffs identify all reasons and provide all factual support for any claim that the products do not infringe. It asserted that a failure to provide the demanded information would be considered an acknowledgement of infringement. *Id*. The defendant concluded the letter by stating that it "takes these claims seriously, recently filing suit against Surgenex, LLC" in Arizona. *Id*. at 2. Five weeks later, March 18, 2025, the defendant's attorneys sent a second letter to San Antonio, Texas and Pennsylvania. This time the letter was sent "VIA OVERNIGHT MAIL" and demanded "a prompt and substantive response by March 26, 2025." Dkt. No. 1-13. Those letters ultimately led to this lawsuit.

The plaintiffs filed the present lawsuit on April 11, 2025. On March 20, 2025, the plaintiff's chief legal officer responded to the letter saying that he had received the letters but had been out of the office. He said that he would respond on or before April 18, 2025. He asked

that all future correspondence be directed to him and included his email and Pennsylvania mailing address. Dkt. No. 1-14. The next response was the present lawsuit in which the plaintiffs seek a declaratory judgment that they do not infringe the six patents and that the six patents are invalid. Dkt. No. 1. The complaint asserts that a justiciable controversy exists regarding each of the six patents based on the two letters and the defendant's "extensive history of enforcing its patents." *Id*. ¶¶ 23-30 (identifying patent infringement lawsuits that the defendant brought in Arizona, Texas, Alabama, and Georgia).

The defendant responded with the present motion, and the parties jointly moved to stay all deadlines pending resolution of the motion. Dkt. No. 36. The Court granted that request. Dkt. No. 37.

## II.  ANALYSIS

The defendant has several bases for its motion. First, it contends that there is no justiciable case or controversy. Dkt. No. 23 at 5-6. Next, it asserts that the Court should decline to exercise jurisdiction based on the plaintiffs' alleged inappropriate conduct and because Georgia is a more convenient venue. *Id*. at 6-11. The defendant then contends that the court should dismiss the suit because it lacks personal jurisdiction over the defendant. *Id.* at 12-16. Finally, the defendant contends that the interest of justice warrant transferring this case to the Northern District of Georgia. *Id*. at 17.

### A.  Existence of a Justiciable Controversy for a Declaratory Judgment

The burden of establishing a justiciable controversy falls on the plaintiff. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citation omitted); *Reactive Surfaces Ltd., LLP v. Toyota Motor Corp.*, No. 1:14-cv-1009, 2015 U.S. Dist. LEXIS 106796, at *6-7 (W.D. Tex. August 13, 2015). Deciding whether a justiciable controversy exists requires the court to

evaluate whether the defendant's conduct "can be reasonably inferred as demonstrating intent to enforce a patent, and whether the controversy is immediate and real." *Charis Eng'g, LLC v. BCCK Eng'g, Inc.*, No. 23-84, 2024 WL 2990548, at *2 (W.D. Tex. Feb. 14, 2024) (citing *Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 761 (W.D. Tex. 2016)). As noted by the plaintiffs, the Court will take all of the plaintiffs' allegations as true and construe them favorably to the plaintiffs. Dkt. No. 31 at 4 (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)). The relevant facts are not disputed, however, as the dispute involves how to interpret those facts.

The defendant's argument against a justiciable controversy is essentially that the plaintiffs acted too soon. The defendant contends that there is no justiciable controversy because "the parties never articulated opposing viewpoints on any issue." *Id*. at 5 (citing *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1374-75 (Fed. Cir. 2011)). The defendant also argues— without authority—that the plaintiffs should not be allowed to rely on the defendant's patent litigation history because it involved different parties, different products, and different circumstances. *Id*. at 5. The defendant's reply offers little more than argument over how to characterize the defendant's letters. Dkt. No. 32 at 1-2.

First, the defendant engaged in an affirmative act that threatened patent enforcement. *UCP Int'l Co. v. Balsam Brands, Inc.*, 787 F. App'x 691, 698 (Fed. Cir. 2019) (noting that jurisdiction requires some affirmative act by the patent holder). Through its attorneys, the defendant sent the plaintiffs a letter accusing them of infringement, requiring them to prove their innocence, and emphasizing that it will sue them. Dkt. No. 1-7. When the plaintiffs did not respond within five weeks, the defendant followed up again through its attorneys with an overnight letter giving the plaintiffs eight days to prove their innocence. Dkt. No. 1-13. The first

letter highlighted the defendant's litigious history by emphasizing its recent lawsuit against Surgenex, LLC. Dkt. No. 1-7 at 3. Considering all the circumstances, which includes the defendant's litigation history identified in the original complaint (Dkt. No. 1 ¶ 28), the Court finds it difficult to interpret the circumstances as anything other than a threat to enforce the defendant's patents against the plaintiffs.

The circumstances also indicate an immediate threat. *See Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014) (listing factors that the Federal Circuit generally considers for immediacy). Based on the defendant's first letter, some of plaintiffs' products were accused of infringing twenty-one claims across five patents, and the defendant and other products were accused of infringing twenty-eight claims across five patents. Dkt. No. 1-7. The defendant demanded all reasons and factual support for any claim of non-infringement and unilaterally considered a failure to provide that information to be an acknowledgement of infringement. *Id*. The defendant created the immediacy when it sent a follow-up letter, through its attorneys, by overnight mail, and demanded a response within eight days. Dkt. No. 1-13. This conduct created an immediate cloud of alleged infringement and potential willful infringement over the plaintiffs' business.

The defendant's letters are also notable for what they did not say. They did not invite a conversation. They did not raise the possibility amicably resolving any concerns or providing a license if infringement was occurring. There was nothing collegial about them. They were accusations of infringement sent by a law firm. They identified specific claims that were allegedly infringed by specific products. And they set a unilateral deadline for the plaintiffs to provide all reasons and facts supporting any denial of infringement. Dkt. No. 1-7; Dkt. No. 1-13. Those accusations—especially the specific identification of infringed claims and infringing

products—left the plaintiffs susceptible to a future claim of willful infringement if the allegations were not resolved, which is exactly what the declaratory judgment action seeks to do. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (noting that knowledge of the asserted patents is a required element to state a claim for willful infringement).

The Court also finds that there was sufficient reality to the defendant's threat. Evaluating the reality of the threat requires examining the evidence indicating whether the defendant would act and if so, what action it would take. *Sandoz¸* 773 F.3d at 1278. The defendant's correspondence directly answers this question. Its initial letter accused the plaintiffs of infringing nearly fifty claims across six patents and emphasized that it will file suit to enforce its patents. Dkt. No. 1-7. Whether the defendant would act by filing suit does not eliminate the very real effect of the defendant's letter on a potential willful infringement claim against the plaintiffs as it served to put the plaintiffs on notice of the patents and of the alleged infringement of those patents. The possibility of facing increased damages resulted immediately upon receipt of the letter by the plaintiffs. *See Monolithic Power*, 2021 WL 3931910, at *5 (listing the requirements for adequately asserting a willful infringement claim). Looking at all the circumstances and taking the undisputed facts as true, the Court finds there is a justiciable controversy.

**B.  The Court Declines the Defendant's Invitation to Grant a Discretionary Dismissal or Transfer this Case to Georgia.**

The defendant also requests that the Court use its discretion to decline jurisdiction or transfer this case to Georgia, "because this lawsuit was anticipatory." Dkt. No. 23 at 7. They essentially contend that the plaintiffs strung them along to get the drop on them. *Id*. at 7-8. The defendant contends that they requested "a response by March 26," that the plaintiffs said they

would respond by April 15, but instead of responding, the plaintiffs filed this suit on April 11. *Id*. at 8. For this argument, the defendant relies primarily on a case from the Eastern District of Pennsylvania that involved the first-to-file rule licensing discussions that had extended over a year. Dkt. No. 23 at 7 (citing *Commc'ns Test Design, Inc. v. Contec, LLC*, 367 F. Supp. 3d 350, 358 (E.D. Pa. 2019) *affirmed at Commc'ns Test Design, Inc. v. Contec*, 952 F.3d 1356 (Fed. Cir. 2020)). They also rely on a case dismissing a declaratory judgment action in favor of a later filed infringement action. *Id.* at 9 (citing *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995)).

None of the cases cited by the defendant are persuasive. Both cases relied on by the defendant involved a competing patent infringement lawsuit filed by the defendant in the declaratory action. *Serco*, 51 F.3d at 1038; *Commc'ns Test*, 952 F.3d at 1359-1360 That is not the case here. Both suits also involved misleading conduct by the declaratory action plaintiff. *Serco*, 51 F.3d at 1038 (noting that Serco responded to Kelly three days after filing the declaratory judgement but said nothing); *Commc'ns Test*, 952 F.3d at 1359 (noting that the declaratory judgment plaintiff's CEO offered to put together a licensing proposal and schedule another call, but never mentioning the declaratory judgment action, which also was not served until after the other party filed a separate patent infringement action). That is not the case here.

The Court declines the plaintiffs' request for a discretionary dismiss or transfer. Unlike the declaratory judgement plaintiffs in the cases cited by the defendant, the plaintiffs here never misled the defendant. They did not engage in licensing discussions without telling the defendant that a lawsuit had been filed. The plaintiffs only committed to providing a response "on or before April 15, 2025." Dkt. No. 1-14. While it might not have been the response the defendant hoped for, this lawsuit was a response. There are no misleading promises or omissions in any of the

plaintiffs' communications. Additionally, transferring this case to Georgia would only be convenient for the defendant. It would be inconvenient for the plaintiffs whose facilities, employees, and witnesses, are located in this district—where the defendant directed its letters to the plaintiffs' co-chief executives. Dkt. No. 1 ¶¶ 4, 8; Dkt. No. 1-7; Dkt. No. 1-13. The plaintiff RegenTX Partners, LLC is a wholly owned subsidiary of the plaintiff Extremity Care, LLC. *Id.* ¶ 7. The plaintiff RegenTX is a Texas entity with its principal office in San Antonio, and it makes the products the defendant accused of infringement. *Id.* at ¶¶ 7, 13. Transferring this case to Georgia would only exchange one inconvenience for another. And while nearly every case cited by the plaintiffs on this point involved the first-to-file rule, even those cases noted that convenience is less important when large national companies are involved. *See Peloton Interactive, Inc. v. Lululemon Athletica Canada Inc.*, No. 21-10071, 2022 WL 4585812, at *4 (S.D.N.Y. Sept. 29, 2022) (addressing the first-to-file rule). Keeping with the authority cited by the defendant—none of which comes from this district—the first-to-file rule is inapplicable as there is no other action on file, and even if there were, the first-filed action, which is this action, is preferred. *Serco*, 51 F.3d at 1039. The Court is unpersuaded that there are sound persuasive reasons to dismiss or transfer this case.

### C.  The Court Finds That it has Personal Jurisdiction Over the Defendant.

The defendant contests the existence of personal jurisdiction over it. It briefly argues that general jurisdiction does not exist because it is at home in Georgia, and the plaintiffs do not dispute that point. Dkt. No. 23 at 12; Dkt. No. 31. The Court accepts that general jurisdiction over the defendant does not exist and turns to an evaluation of specific jurisdiction.

The defendant denies the existence of specific jurisdiction. It argues that the Court should first ignore the arguments about the defendant directing activities at and conducting business in

this district. Dkt. No. 23 at 12 (referring to Dkt. No. 1 ¶ 12(iii)-(iv) and citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). The defendant contends that its letters should not create personal jurisdiction because they were also sent to Pennsylvania and because the plaintiffs' counsel requested that future correspondence be sent to Pennsylvania. *Id*. at 12-13. The defendant also contends that its only other contact related to this case was a lawsuit filed many years ago and that should be insufficient to create specific jurisdiction. *Id*. at 14 (citing *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1357-1358 (Fed. Cir. 2017) and *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996)). The defendant contends that single lawsuit did not involve all the patents at issue and did not involve all the products at issue. They contend this is insufficient for specific jurisdiction to exist. *Id*. at 15-16 (relying on *MG Freesites Ltd. v. DISH Techs. L.L.C.*, 712 F. Supp. 3d 1318, 1328 (N.D. Cal. 2024)).

The Court is persuaded that specific jurisdiction exists over the defendant. As the defendant notes, it sent both letters to the plaintiffs' offices in this district. Dkt. No. 1-7; Dkt. No. 1-13. While the defendant focuses on the state of formation for two of the plaintiffs, it ignores the actual letters it sent. The Court notes that the first address listed in both letters was in this District. Both letters were also addressed to specific individuals in this District—"Scott Madden & Oliver Burckhardt, Co-Chief Executive Officers." The letters sent to Pennsylvania were only addressed to non-specific "Executive Team Members." Dkt. No. 1-7; Dkt. No. 1-13. Having directed their threatening correspondence to the Co-Chief Executive Officers in this District, the defendant should not be surprised to be hauled into court to answer for them. Under Federal Circuit authority, those letters are sufficient to create specific jurisdiction. *See New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017); *Apple Inc. v. Zipit Wireless,*

*Inc.*, 30 F.4th 1368, 1376 (Fed. Cir. 2022); *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017). The defendant has also litigated one of the asserted patents against similar products in this District. Dkt. No. 1 ¶ 12 n.1 (citing *MiMedx Group, Inc. v. Tissue Transplant Tech., Ltd. et al.*, No. 1:14-cv-00464-LY (W.D. Tex.), transferred as case No. 5:14-cv-00719-RCL (W.D. Tex.)); Dkt. No. 31 at 15.

The defendant failed to demonstrate that the exercise of jurisdiction over it would be unreasonable. The defendant failed to articulate how exercising jurisdiction over it would create an unreasonable burden. The defendant has litigated patent cases in this district and in many other districts across the United States. Dkt. No. 1 ¶ 28. The first letter the defendant sent to the plaintiffs highlighted a recent lawsuit that the defendant filed in Arizona. Dkt. No. 1-7. Additionally, the defendant failed to rebut the plaintiff's allegation that the defendant has engaged in significant commercialization efforts in Texas. Dkt. No. 31 at 19. This demonstrates that there is nothing unreasonable about the Court exercising jurisdiction over the defendant.

Lastly, Texas has a substantial interest in adjudicating patent infringement claims brought against in-state businesses such as the plaintiffs. *Apple v. Zipit*, 30 F.4th 1368, 1380 (Fed. Cir. 2022) (noting that a state has "a substantial interest in protecting its residents from unwarranted claims of patent infringement."). As noted above, the plaintiff RegenTX is a Texas resident, and the plaintiffs' co-chief executives are located in this District.  All of this leads the Court to conclude that it has specific personal jurisdiction over the defendant.

Neither case relied on by the defendant is persuasive. *See New Angle LLC v. IQAir N. Am., Inc.*, No. 22-113, 2022 WL 4386661, at *2-3 (D.N.H. Sept. 22, 2022); *iFIT Inc. v. Williams*, Case No. 1:21-cv-00006-JNP-DBP, 2022 WL 523417, at *2, 6 (D. Utah Feb. 22, 2022). First, neither of those cases are from courts in this District or Circuit. And while *New Angle* involved a

single cease-and-desist letter, it did not involve any history of in-state litigation or commercialization by the declaratory judgement defendant. *New Angle LLC*, 2022 WL 4386661, at *2-3. The *iFIT* court found that sending a letter referencing "possible infringement" would satisfy sufficient minimum contacts. *iFIT Inc.*, 2022 WL 523417, at *3. The court held, however, that it would be unreasonable to exercise jurisdiction over two out-of-state individual inventors based on that single letter and no other contacts with the forum state. *Id*. at *4. Here, the defendant sent a detailed letter to the co-chief executive officers of the plaintiffs in this District. The defendant made specific accusations of infringement that identified specific products and specific patent claims. It overtly stated that the defendant was willing to sue potential infringers by referencing a recently filed infringement suit in Arizona. The defendant followed the first letter with a second, overnight mail letter to the same officers in this District demanding a response by a date certain. The defendant previously litigated at least one of the asserted patents against similar technology in this District. These facts distinguish the defendant's cited authority and convince the Court that the defendant has sufficient minimum contacts with this District and that the exercise of personal jurisdiction over it would not be unreasonable.

### D.  The Court Does Not Agree That The interest of Justice Warrant Transfer.

Finally, the Court declines the defendant's request to transfer this case to Georgia under 28 U.S.C. § 1631. That statute permits a court to transfer a case that has been filed in an improper jurisdiction to transfer the case to a court of proper jurisdiction, if it is in the interest of justice. 28 U.S.C. § 1631. As noted above, the Court is persuaded that it has personal jurisdiction over the defendant and that this is a Court of proper jurisdiction. 28 U.S.C. § 1631 is inapplicable, and the request to transfer should be denied. *2M Asset Mgmt., LLC v. NetMass, Inc.*, No. 06-215, 2006 WL 8440325, at *3 (E.D. Tex. Aug. 1, 2006).

### III.  RECOMMENDATION

For the foregoing reasons, the undersigned finds that this Court has personal jurisdiction over the defendant. The undersigned also finds that the declaratory judgment action is proper and the Court should decline the defendant's request to exercise its discretion to dismiss or transfer. Finally, 28 U.S.C. § 1631 is inapplicable. Thus, the undersigned **RECOMMENDS** that the defendant's motion to dismiss or in the alternative transfer (Dkt. No. 23) should be **DENIED**.

### IV.  OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

**SIGNED** this 9th day of February, 2026.

_____

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE